UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Case No.: 2:24-cr-20428
                                                          Hon. Gershwin A. Drain

BRANDON MILLS,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION IN LIMINE [ECF No. 30] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF No. 40]

## I.    INTRODUCTION

Defendant Brandon Mills is indicted for four counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *See* ECF No. 35. Specifically, the indictment charges Mills with possessing a Glock 43X pistol, a Taurus G2C pistol, a Glock 23 pistol, and a Draco-style semiautomatic pistol, at various times between March 2022 through June 2024, while knowing he had been convicted of a crime punishable by a term of imprisonment exceeding one year. *Id.*

1

Presently before the Court are two motions filed by Mills. First, Mills filed a "Motion in Limine"[1] seeking to suppress his statement to police, in which he told them that his girlfriend's gun was in his house. *See* ECF No. 30. Mills argues that the officers violated his *Miranda* rights by asking him whether he had weapons in the house without giving him *Miranda* warnings. *Id.* at PageID.249. Second, Mills filed a Motion to Suppress Evidence, arguing that the search warrant for Mills' cell phone was invalid and that all evidence the Government received from the execution of that warrant is fruit of the poisonous tree. ECF No. 40, PageID.300.

The Government responded in opposition to each motion. Mills did not file replies. The Court held a motion hearing on May 22, 2025, during which both parties presented oral arguments on the pending motions. For the following reasons, both Motions to Suppress [ECF No. 30; ECF No. 40] are DENIED.

## II.    BACKGROUND

On May 24, 2024, Canton Police arrested Mills in Detroit, Michigan for stealing a Jeep Cherokee out of Canton, Michigan. ECF No. 45-1, PageID.339. During this arrest, Canton Police confiscated Mills' cell phone and obtained a state

---

[1] Although Mills styled this motion as a "Motion in Limine," it is more appropriately considered a Motion to Suppress Evidence. *See United States v. Isaac*, No. 7:17-CR-6-KKC, 2017 WL 6540034, at *1 n.1 (E.D. Ky. Dec. 21, 2017) ("Defendant does not allege that the evidence is inadmissible under the Federal Rules of Evidence, but rather that it was obtained in violation of the Fourth and Fifth Amendments. Such a claim is properly brought as a motion to suppress."). Hereafter, this Memorandum will refer to the motion as a Motion to Suppress.

search warrant to search its contents. ECF No. 45, PageID.319. At some point thereafter, Mills was released from custody.[2] Canton Police continued their investigation of Mills during this time and established probable cause to arrest him for car theft based on the evidence retrieved while searching through his phone. Canton Police arrested him again on June 20, 2024. *Id.* at PageID.320.[3]

During this June 2024 arrest, Canton Police approached Mills while he was outside of his home in his underwear and placed him under arrest. *Id.* Mills informed the officers that his infant daughter was in the home alone and asked if he could go inside to put on some pants. *Id.* The officers told Mills they could not allow him to go into the home alone, but that they could go with him. ECF No. 33-2, PageID.269. Mills consented to officers going with him into the home. *Id.*

As Mills and the officers entered the home and headed toward the bedroom where Mills' daughter was located, the following exchange occurred:

> OFFICER: So just a girl in there?
> MILLS: Yeah, my daughter.
> OFFICER: You ain't got no weapons in here?
> MILLS: Oh yeah, I do.
> OFFICER: Where's that at?
> MILLS: Right there, it's my girl's gun.

---

[2] On the record provided by the parties, it is not clear why or at what point Mills was released between his arrest on May 24, 2024, and his subsequent arrest on June 20, 2024.

[3] Mills ultimately pled guilty in state court for receiving and concealing a stolen motor vehicle. ECF No. 45, PageID.320.

Officer Lewa Body Cam, 04:18–04:40. The gun was a 9mm Glock 43X pistol, which was located on the dresser in Mills' bedroom. The officers removed the magazine and round in the chamber. ECF No. 45, PageID.320.

As a result of the gun in Mills' bedroom, the federal Government indicted Mills on August 6, 2024, for one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). ECF No. 13. While this prosecution was ongoing, on February 7, 2025, the Government applied for a warrant to search the data that Canton Police retrieved from Mills' phone after his May 2024 arrest. ECF No. 45-1. FBI Special Agent Brian Brown provided an affidavit in support of the warrant. The affidavit described the circumstances under which Canton police obtained Mills' phone. Specifically, it described how Mills was driving a stolen vehicle, was apprehended by Canton Police, and had his phone seized. *Id.* at PageID.339–40. During that arrest, Mills admitted to calling his girlfriend to come pick him up after he had moved the stolen vehicle. *Id.* at PageID.340. The affidavit made no connection between Mills' car theft and his firearm possession.

The affidavit also discussed the facts related to the federal felon-in-possession case. It described how the officers discovered the gun in Mills' home and how Mills told them it was his girlfriend's. It noted that law enforcement confirmed the gun was registered to Mills' girlfriend and that she purchased it in March 2023. Furthermore, the affidavit stated that Mills' girlfriend bought a similar handgun in

4

March 2022 (a year earlier), merely five days after Mills' release from the Michigan Department of Corrections ("MDOC") for a separate crime. *Id.* at PageID.341–42.

Next, the affidavit described the nexus between the evidence to be sought in this case—demonstrating that Mills "possessed" his girlfriend's gun—and the cell phone data. Agent Brown stated that in his experience, handguns are "highly valued possessions" and those who possess them often take photos or videos of themselves with them, and these were likely to be found on Mills' phone. *Id.* at PageID.343. Furthermore, he declared that the phone was likely to contain Mills' location data which would place him at the location that his girlfriend stored her handguns. *Id.* Finally, he claimed that Mills' phone was likely to contain communications between himself and his girlfriend about the purchases of both her guns, particularly because the March 2022 purchase coincided with his release from the MDOC. *Id.*

As for the cell phone data to be searched, the application specified that the Government sought to search all records that relate to violations of 18 U.S.C. § 922(g)(1) since March 10, 2022, including photos and videos, all communications (such as texts and instant messages on social media platforms), all location data, and all user attribution data (which shows who used or owned the device at the times in question). *Id.* at PageID.353–54.

Magistrate Judge Kimberly G. Altman approved and issued the search warrant the same day, finding that there was probable cause to search the phone data. *Id.* at

PageID.355. Pursuant to the search, the Government found a photo of Mills with the Glock 43X, photos of him with numerous other guns (including the other gun his girlfriend owned), videos of him firing guns at a shooting range, text messages between Mills and his girlfriend discussing guns, a calendar entry related to Mills' girlfriend's initial purchase of the handgun in March 2022, and text messages where Mills offered to sell a Glock 23 handgun for $600. ECF No. 45, PageID.321–22. From this additional evidence, the Government brought a superseding indictment against Mills with four counts of felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *Id.* at PageID.322.

### III.   ANALYSIS

#### a.  First Motion to Suppress: Violation of *Miranda v. Arizona*

In Mills' first Motion to Suppress, he argues that Canton Police officers violated his *Miranda* rights by questioning him prior to reading him *Miranda* warnings. He notes that during his arrest, an officer asked him whether there were any weapons in the house. In response, Mills stated that his "girl's gun" was there. ECF No. 30, PageID.247–48. The officer asked Mills the question about weapons prior to mirandizing Mills. As such, Mills argues that his response about his girlfriend's gun must be suppressed. *Id.* at PageID.248.

The Government responded in opposition. The Government argues that Mills' motion should fail because (1) the officer's question was a question normally

6

attendant to arrest and did not implicate *Miranda*, and (2) even if *Miranda* were implicated, the public and officer safety exception to *Miranda* applies. *Id.* at PageID.260–63. In sum, the Government argues that Mills' statement to police should not be suppressed.[4]

### i.    Law on *Miranda* Warnings

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. To safeguard this right, the Supreme Court held in *Miranda v. Arizona* that when a person is subjected to custodial interrogation, "he must be informed in clear and unequivocal terms that he has the right to remain silent" and "that he has the right to consult with a lawyer and to have the lawyer with him during interrogation[.]" 384 U.S. 436, 467– 68, 471 (1966). "[F]ollowing proper administration of a suspect's *Miranda* warnings and a voluntary and intelligent waiver of those rights, questioning may proceed…

---

[4] The Government also argues that this motion—which is a Motion to Suppress incorrectly fashioned as a "Motion in Limine"—should be denied as untimely. ECF No. 33, PageID.259. Indeed, at the time Mills filed this motion, the deadline for filing pretrial motions (excluding motions in limine) had long passed. *See* ECF No. 16; ECF No. 17. Nevertheless, the Court resolves this motion on the merits, because the Government subsequently filed a superseding indictment against Mills and the Court is considering Mills' other Motion to Suppress based on that superseding indictment. *Kowalke v. Swiss-America Trading Corp.*, No. 2:11-cv-280, 2011 WL 13130883, at *2 (S.D. Ohio Oct. 11, 2011) (stating that courts prefer to decide a motion "on its merits rather than on technicalities."). However, the Court makes defense counsel "aware that, in the future, restyling motions to suppress as motions in limine to take advantage of the later deadline will result in them being denied as untimely." *Isaac*, 2017 WL 6540034, at 1 n.1.

unless and until" the person invokes one of his *Miranda* rights. *United States v. Walters*, No. 6:24-cr-19-REW-HAI, 2024 WL 4751284, at *2 (E.D. Ky. Nov. 12, 2024). If officers do not provide a suspect with *Miranda* warnings when required, any statements the suspect makes generally must be excluded at trial. *See Missouri v. Seibert*, 542 U.S. 600, 608 (2004) ("[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.").

For a suspect's *Miranda* rights to attach, he must be subject to custodial interrogation. "[A] person is in custody for purposes of *Miranda* if, 'in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *United States v. Williams*, 998 F.3d 716, 736 (6th Cir. 2021) (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)); *see also United States v. Ray*, 803 F.3d 244, 266 n.12 (6th Cir. 2015) ("A suspect is 'in custody' for *Miranda* purposes if there has been a 'formal arrest or restraint on freedom of movement.'" (citation omitted)). Interrogation refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *McKinney v. Hoffner*, 830 F.3d

363, 371 (6th Cir. 2016) (interrogation "includes 'either express questioning or its functional equivalent.'" (citation omitted)).

### ii.  The Officer's Question Was Normally Attendant to Arrest and Custody, And Was Not Interrogation for *Miranda* Purposes

As an initial matter, when the officer asked Mills about whether he had weapons in the house, Mills "was handcuffed at the time and, thus, 'in custody' for *Miranda* purposes." *United States v. Ray*, 690 Fed. App'x 366, 372 (6th Cir. 2017). Notably, the Government did not contest whether Mills was in custody in its response. Thus, Mills was in custody at the time the officer asked him the question.

The remaining issue, therefore, was whether Mills was interrogated. "Under Supreme Court precedent, questions asked 'normally attendant to arrest' aren't 'interrogations' subject to *Miranda*—even if they might yield an incriminating answer." *United States v. Lester*, 98 F.4th 768, 774 (6th Cir. 2024) (citing *Innis*, 446 U.S. at 301). Questions that are a "natural and automatic response to the unfolding events during the normal course of an arrest," and not an "investigatory question or otherwise calculated to elicit an incriminating response" are normally attendant to arrest. *United States v. Woods*, 711 F.3d 737, 741 (6th Cir. 2013). Moreover, an officer does not engage in interrogation "when [he] asks about information he was already entitled to know through a search incident to arrest." *Lester*, 98 F.4th at 773 (citation and internal quotation marks omitted).

9

Courts have found many questions designed to ascertain the identity of an object or to ensure officer safety during an arrest are "normally attendant to arrest." *See Woods*, 711 F.3d at 741 (asking "what's in your pocket?" was normally attendant to arrest); *Lester*, 98 F.4th at 773 (asking if there was "anything else on you, any other drugs, anything that would stick or harm me" was normally attendant to arrest); *United States v. Malone*, No. 2:23-CR-120, 2024 WL 4487653, at *6 (E.D. Tenn. Mar. 18, 2024), *report and recommendation accepted and adopted in part by* 2024 WL 4182947 (E.D. Tenn. Sept. 13, 2024) (asking whether the suspect "had anything illegal on his person" is normally attendant to arrest); *United States v. Harvey*, No. 5:17-CR-86-DCR-REW, 2017 WL 4018478, at *12–*13 (E.D. Ky. Sept. 11, 2017) (asking an arrestee whether he had any weapons was normally attendant to arrest); *United States v. Miles*, 82 F. Supp. 2d 1201, 1211 (D. Kan. 1999) (in a question addressed to all inhabitants of an apartment, asking "whose gun is this?" was not interrogation); *United States v. Rolenc*, No. 8:13CR143, 2013 WL 6154398, at *7 (D. Neb. Oct. 18, 2013) (asking an arrestee whether she had "any weapons, drugs, or illegal contraband on her" was normally attendant to arrest).

In this case, the officer's question about the presence of weapons in the home was akin to asking whether a suspect has contraband or other items on his person when he is physically arrested. Mills had been placed under arrest and the officers had to go inside Mills' home with him so he could put on his pants and check on his

infant daughter. Mills' home was unknown to the officers and they knew that Mills' baby was inside and possibly vulnerable. The officer's question about weapons was designed to ensure that no one was harmed during the process of leading Mills through his house. *Harvey*, 2017 WL 4018478, at *13 (asking whether there were weapons in the house "was designed to probe possible bases of officer danger and enable [the officer] to act in furtherance of ensuring officer safety.").

Furthermore, "[weapon] possession—*alone*—is not a criminal activity[.]" *Id.* The officers' arrest of Mills had nothing to do with firearms, but rather with car theft. The officers had no way to know that Mills would say that he had a firearm specifically. *See Lester*, 98 F.4th at 773 (an interaction does not transform into an interrogation when a suspect offers an "unexpected" answer); *Woods*, 711 F.3d at 741 (same).

Finally, the Sixth Circuit has made clear that it would be "an impractical regime of stilted logic" to hold that officers could not ask questions about information they were "already entitled to know." *See Woods*, 711 F.3d at 742 (the officer was entitled to search the suspect's person, so he was entitled to ask him what was in his pocket); *Lester*, 98 F.4th at 773 (the officer was entitled to search the suspect's person, so he was entitled to ask the suspect if he had drugs or anything that could "stick or harm" him). In this case, Mills consented to have the officers accompany him inside while he put on pants and checked on his daughter. Mills'

consent eliminated the Fourth Amendment prohibition on officers entering his home. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) ("The Fourth Amendment generally prohibits the warrantless entry of a person's home… The prohibition does not apply, however, to situations in which voluntary consent has been obtained[.]").

Mills' gun was located on the top of a dresser in the bedroom that Mills walked into with police, and in which his daughter was present. The officers would have been entitled to see and seize the gun under the plain view exception to the Fourth Amendment. Under the plain view exception, officers are permitted to make warrantless seizures where "(1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and (3) the officer has a lawful right of access to the object itself." *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004). Here, the officers would have inevitably seen the gun in plain view as they walked into the bedroom, its incriminating character would have been apparent, and they would have had the right to access it because Mills consented to the officers' presence in the house. It would be "illogical" to conclude that the officers could not ask Mills about weapons when they would have been able to see and seize the gun which was in their plain view. *Woods*, 711 F.3d at 741.

Thus, the question the officer asked Mills was normally attendant to arrest, not interrogation, and did not implicate Mills' *Miranda* rights.[5]

**b. Second Motion to Suppress: Violation of the Fourth Amendment**

In Mills' second Motion to Suppress, Mills asserts that the affidavit in support of the FBI's search warrant for his phone data did not contain a sufficient nexus between the criminal activity alleged (possessing a firearm) and the phone. ECF No. 40, PageID.305. Mills also states that the warrant authorized the government to conduct an overbroad search with no discernable connection to the case and with no temporal limitation. *Id.*

The Government responded, noting that the warrant temporally limited the data collection to records created since March 10, 2022, when Mills' girlfriend purchased her first gun. ECF No. 45, PageID.319. The Government also notes that the warrant connected the evidence sought with Mills' crime. Namely, the affidavit stated that the evidence likely to be found in the phone data were photos, location data, and communications that demonstrated that Mills had access to and control over firearms. *Id.* at PageID.325. Moreover, the Government asserts that the categories of evidence that the Government sought from the cell phone were not overly broad and were reasonable under the circumstances. *Id.* at PageID.330.

---

[5] Because the Court decides that the officer's question was normally attendant to arrest, the Court does not reach the Government's argument that the question is permissible under the public safety exception to *Miranda*.

Finally, the Government argues that even if the warrant lacked probable cause or was overbroad, the "good faith exception" applies here. *Id.* at PageID.331.

### i.     Law on Probable Cause, Particularity, and the Good Faith Exception

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A valid warrant under the Fourth Amendment requires three things:

> (1) it must be issued by a neutral, disinterested magistrate or judge; (2) those seeking the warrant must demonstrate to the magistrate or judge their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) the warrant must particularly describe the things to be seized, as well as the place to be searched.

*United States v. Smith*, No. 21-1457, 2022 WL 4115879, at *3 (6th Cir. Sept. 9, 2022) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)) (internal quotation marks and brackets omitted). In this case, Mills challenges probable cause and particularity.

### a. Probable Cause

The Fourth Amendment "prohibits judges from issuing search warrants unless the requesting officer demonstrates probable cause." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018). When a magistrate judge is presented with an application for a search warrant, his task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him… there is

a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "In other words, there must be a probable cause nexus between the place to be searched and the evidence sought." *Smith*, 2022 WL 4115879, at *3 (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)) (internal quotation marks omitted); *United States v. Glatz*, No. 3:19-CR-218-TAV-DCP, 2023 WL 4503981, at *11 (E.D. Tenn. May 1, 2023) ("To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" (citation omitted)).

Notably, probable cause is "not a high bar" to clear and requires "only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (citations omitted). It "is a practical, non-technical conception that deals with the factual and practical considerations of everyday life" and is "based on common-sense conclusions about human behavior." *United States v. Reed*, No. 22-20447, 2023 WL 6797001, at *3 (E.D. Mich. Oct. 12, 2023) (internal quotation marks and citations omitted). Courts analyzing whether there is probable cause for a search warrant must consider the affidavit in support of the warrant holistically under the totality of the circumstances, *see Smith*, 2022 WL 4115879, at *5–*6, and are forbidden from engaging in "hypertechnical… line-by-line scrutiny." *Christian*, 925 F.3d at 311 (citation omitted).

Moreover, the task of a court reviewing a magistrate judge's decision to issue a search warrant "is simply to ensure that the magistrate had a substantial basis for… conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238–39 (citation omitted); *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (magistrate judge's decision accorded "great deference."). The Sixth Circuit "has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Allen*, 211 F.3d at 973.

b. *Particularity*

The Fourth Amendment's particularity requirement "stems from the Founders' concern with 'curb[ing] the abuses of general warrants, devices which provided British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes.'" *United States v. Rarick*, 636 Fed. App'x 911, 914 (6th Cir. 2016) (quoting *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010)). The requirement focuses on "two rather different problems: one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take; and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (citation omitted).

The degree of specificity necessary to satisfy the particularity requirement "is flexible and will vary depending on the crime involved and the types of items

16

sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (citation omitted). Notably, the search warrant may incorporate the affidavit by reference, and the particularity requirement will be satisfied even if the search warrant does not state the particulars itself. *Rarick*, 636 Fed. App'x at 914.

    *c. The Good Faith Exception*

Even if a search warrant was issued in violation of the Fourth Amendment, the evidence that officers obtained while executing the warrant need not be excluded from trial "if the police acted in an objectively reasonable reliance" on that search warrant. *Herring v. United States*, 555 U.S. 135, 142 (2009) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)) (internal quotation marks omitted). Known as the "good faith exception," this rule permits the admission of evidence obtained through the execution of a deficient search warrant unless: (1) the magistrate judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) the magistrate judge "wholly abandoned his judicial role"; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is so "facially deficient—i.e., failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (citation omitted). Only the third and fourth *Leon* exceptions are implicated here.

As to the second *Leon* exception, affidavits so lacking in probable cause "are commonly called 'bare bones' affidavits," and merely contain an officer's "suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]" *United States v. Genco*, 584 F. Supp. 3d 515, 535 (S.D. Ohio 2022). "[A] bare bones affidavit is similar to, if not the same as, a conclusory affidavit. It is one which states only the affiant's belief that probable cause existed." *Christian*, 925 F.3d at 313 (citation omitted) (internal quotation marks omitted).

As to the fourth *Leon* exception, the Sixth Circuit has interpreted this exception to be concerned with "technical deficienc[ies]" such that "the place to be searched or the objects to be seized are not particularly described." *United States v. Savoca*, 761 F.2d 292, 296 (6th Cir. 1985) (citing *Stanford v. Texas*, 379 U.S. 476 (1965)). In an ordinary case, "an officer cannot be expected to question the magistrate's… judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. Rather, the warrant must be so facially deficient that a reasonable officer could not rely on its legality. *Id.* at 923.

### ii.    The Search Warrant Was Supported by Probable Cause

The Government argues that the affidavit describes how Mills used his cell phone to communicate with his girlfriend and others when he was stealing cars, and that this fact supports probable cause to search his phone in connection with his

firearm possession. However, the circumstances of Mills' car thefts had nothing to do with his possession of a firearm—at least, the affidavit does not say as much. The affidavit makes no connection whatsoever between Mills' car thefts and his girlfriend's guns, so it strains reason to infer that there is a "probable cause nexus" between Mills' phone and evidence of his firearm possession because he called his girlfriend to come pick him up after his car theft. *Smith*, 2022 WL 4115879, at *3.

However, the affidavit contains some additional information which more directly connects evidence of Mills' firearm possession with Mills' phone. Agent Brown noted that Canton Police retrieved location data from Mills' phone in connection with his state car theft investigation, and discussed how cell phones act as GPS devices and how it was likely that the Government could retrieve location data to demonstrate the amount of time Mills spent in proximity to where his girlfriend stored her firearms. ECF No. 45-1, PageID.340, 343, 345. It is, perhaps, a "common-sense conclusion[] about human behavior" to infer that Mills likely spent a significant amount of time with his girlfriend where she kept her guns, and that his location data would corroborate that fact. *Reed*, 2023 WL 6797001, at *3.

In addition, Agent Brown connected Mills' girlfriend's purchase of the first gun with Mills' release from prison, stating that it is fairly probable that they discussed this purchase over text message. *Id.* at PageID.343. The closeness of this purchase to Mills' release from custody arguably creates an inference that Mills was

involved in the purchase or would have at least talked to his girlfriend about it. *See Smith*, 2022 WL 4115879, at *8 ("[A] judge could reasonably infer that there is a fair probability that [defendants] used their cell phones to communicate, at some time, about some aspect of the shooting because that is how people in our modern society communicate when they do anything together.").

Finally, Agent Brown stated that in his experience, handguns are prized possessions and those who possess them often take pictures with them. ECF No. 45-1, PageID.342–43. As such, Agent Brown concluded that photos of Mills with the guns were likely to be found on the phone. *Id.* An officer's "training and experience" may be used to establish probable cause, but it is insufficient to establish probable cause where there is no additional evidentiary nexus. *See United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). As noted, Agent Brown identified two other probable cause nexuses between the phone and the crime in question. Accordingly, Agent Brown's "training and experience" may be another supporting factor for the finding of probable cause in this case.

Arguably, these probable cause nexuses are weak and rely on "some generous inferences." *United States v. Lavallis*, 515 F. Supp. 3d 686, 692 (E.D. Mich. 2021). Rather than clearly describing the connection between Mills' location and the guns, and Mills' release from prison and the guns, the reader must make inferences to conclude that Mills likely spent time with his girlfriend and that Mills likely

discussed the firearm purchase over text because of the closeness of the purchase to his release from the MDOC. From there, the reader is required to rely on Agent Brown's mere training and experience to conclude that there would be photo and video evidence of Mills' gun possession.

The Supreme Court's decision in *Riley v. California* highlights the infirmities in the Agent Brown's affidavit. In *Riley*, the Court declined to permit warrantless searches of cell phones where "it is reasonable to believe the phone contains evidence of the crime of arrest." 573 U.S. 373, 398 (2014) (citing *Arizona v. Gant*, 556 U.S. 332, 343 (2009)). In so deciding, the *Riley* Court noted that "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Id.* at 399. The Court concluded that permitting warrantless searches based on such a hunch would "prove no practical limit at all when it comes to cell phone searches." *Id.* Here, Agent Brown's somewhat contrived connections between Mills' phone and the firearm possession come concerningly close to the type of reasoning for a search that the Court in *Riley* rejected: the mere "reasonable belief," without much more, that Mills' phone contains evidence of firearm possession because a firearm was found when he was arrested.

Nevertheless, although it is a close case, the affidavit and search warrant pass constitutional muster. Cases in which courts have found probable cause lacking—or

at least expressed grave doubt about the existence of probable cause—typically involve affidavits that contain even fewer connections between the officer's suspicions and the specific facts of the case. *See Schultz*, 14 F.3d at 1097–98 (finding probable cause lacking where the only probable cause nexus to search a safe deposit box was the officer's training and experience that records of drug distribution are often kept in such boxes); *Lavallis*, 515 F. Supp. 3d at 692–93 (expressing doubt about the existence of probable cause to search a cell phone where the probable cause nexus included factual circumstances that did not bear on the defendant's phone specifically, and the officer's training and experience that those involved in the unlawful possession of firearms often use phones to facilitate the acquisition and transfer of those firearms); *Glatz*, 2023 WL 4503981, at *11 (finding probable cause lacking where the only probable cause nexus to search a cell phone was the officer's belief that incriminating evidence would be found on the cell phone, without connecting her belief to her training and experience or the facts of the case).

In contrast, Agent Brown connected some facts of the case to the evidence likely to be found on the phone—namely, the fact that Mills had just been released from MDOC custody when his girlfriend bought her first gun, and the fact that Mills' phone was likely to have location data placing him in the vicinity of his girlfriend's guns. Agent Brown also tied some of the evidence to be found to his training and experience. Noting that the probable cause determination is a practical and

commonsense endeavor, and mindful that the magistrate judge's determination of probable cause "should be paid great deference" and only overturned where she "arbitrarily exercised… her authority," the warrant in this case was based on sufficient probable cause. *Christian*, 925 F.3d at 311–12.

### iii.    Even If There Were No Probable Cause, The Good Faith Exception Is Applicable

Even if the affidavit contained no probable cause in this case, the officers' reasonable, good-faith reliance on the search warrant prevents the exclusion of the evidence seized from Mills' phone. Officers are entitled to rely on reasonable inferences to be made from an affidavit, even if those inferences "are not sufficient to sustain probable cause in the first place[.]" *United States v. Merriweather*, 728 Fed. App'x 498, 505 (6th Cir. 2018) (quoting *United States v. White*, 874 F.3d 490, 500 (6th Cir. 2017)). Officers may also rely on statements within an affidavit about the affiant's training and experience where the training and experience is "consistent with common sense." *Id.* Notably, a "minimally sufficient nexus" to apply the good faith exception exists "if the reviewing court is able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been— some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *Glatz*, 2023 WL 4503981, at *12 (quoting *United States v. Tucker*, 742 Fed. App'x 994, 999 (6th Cir. 2018)).

Here, officers were entitled to rely on the warrant given the reasonable inferences and practical human experience that (1) Mills' phone likely contained location data demonstrating that he spent time with his girlfriend and her guns; and (2) Mills likely discussed his girlfriend's first gun purchase with his girlfriend over text message, considering the coincidence of Mills' release from MDOC custody and the purchase of her first gun. Moreover, officers were reasonable in relying on Agent Brown's statement of his training and experience, because it is widely understood that individuals with access to guns often take pictures with them. *See Schultz*, 14 F.3d at 1098 (although officer's training and experience were not sufficient to establish probable cause to search the defendant's safe deposit box, "the connection was not so remote as to trip on the 'so lacking' hurdle."). In sum, the warrant was not so lacking in probable cause as to render official belief in its existence entirely unreasonable.

### iv.     The Warrant Was Particularized and Not Overbroad

Mills argues that the warrant in this case was overbroad because it permitted the Government to search Mills' photos and videos, communications (such as text messages, social media messages, etc.), and location data with "no articulated connection to the factual allegations in the affidavit." ECF No. 40, PageID.305. This assertion is untrue. The search warrant incorporated the affidavit by reference. *See Rarick*, 636 Fed. App'x at 914. The affidavit specified that the categories of evidence

24

to be searched were photos and videos of Mills with the guns, Mills' communications about the guns, and location data that demonstrates Mills' presence near the guns. *See* ECF No. 45-1, PageID.343. The affidavit also permitted a search of user attribution data, which shows who owned or used the phone at the time the other relevant data was collected. *Id.*

Notably, the reasonableness of a search is a "case-by-case" determination. *Richards*, 659 F.3d at 539. Applying this case-by-case reasonableness standard, "the federal courts have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers," *id.*, and this applies to cell phones as well. *See United States v. Bass*, 785 F.3d 1043, 1050 (6th Cir. 2015). Courts reject particularity challenges under these circumstances because "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity," which may necessitate "a broad, expansive search" of the electronic device. *Richards*, 659 F.3d at 538 (quoting *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011)). Here, it was reasonable to permit law enforcement to search Mills' communications, photo library, and location data, considering that officers had no way to know where pertinent evidence would be located in Mills' data or in what format it would be. *See Bass*, 785 F.3d at 1050 (finding that a search warrant permitting officers to search defendant's communications, calendars, address books, emails, and chat logs was not overbroad).

Mills also argues that the warrant contained no temporal limitation, but that statement is also false. The affidavit—which was incorporated by reference in the warrant—limited the search of the cell phone to records created since March 10, 2022, when Mills' girlfriend purchased her first gun. ECF No. 45, PageID.319; ECF No. 45-1, PageID.353.

In sum, the search warrant in this case was substantively and temporally limited, and not overbroad.

### v.   Even If The Warrant Were Overbroad, The Good Faith Exception Is Applicable

Even if particularity were lacking here, the officers' reasonable, good-faith reliance on the search warrant prevents the exclusion of the evidence seized from Mills' phone in this case. The warrant describes the things to be searched and limits the scope to Mills' photos and videos, communications, location data, and relevant user attribution data since March 10, 2022, which reflect Mills' knowledge and possession of firearms. *See United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at *6 n.25 (D. Kan. Apr. 10, 2018) (holding that a warrant to search a defendant's Facebook accounts was not overly broad where it was "limited to search for evidence relating to a specific crime, and it did not authorize on its face a search for every record[.]"). The warrant also describes the place to be searched—namely, the data contained on a hard drive which was extracted from Mills' cell phone by Canton Police.

Furthermore, this is not a case where Sixth Circuit case law is unfavorable, or even unsettled, as it pertains to this type of search of cell phone data. *See, e.g.*, *United States v. Broughton*, No. 24-4-DLB-CJS, 2024 WL 5396564, at *8 (E.D. Ky. Nov. 25, 2024), *report and recommendation adopted*, 2025 WL 53140 (E.D. Ky. Jan. 9, 2025) (noting that unsettled case law on the particularity required for a certain warrant lends to the reasonableness of the officer's reliance on the warrant). The Sixth Circuit has *approved* of search warrants for similar categories of cell phone data. *See Bass*, 785 F.3d at 1050. The Sixth Circuit has also permitted relatively broad searches of electronic devices, given that officers have no idea how a suspect may have stored relevant information on that device. *Richards*, 659 F.3d at 539. Thus, to the extent there is an overbreadth issue in this case, a reasonable officer could not have been expected to question the magistrate judge's decision to sign the warrant. *Leon*, 468 U.S. at 921.

## IV.   CONCLUSION

For the foregoing reasons:

1. Mills' Motion in Limine, construed as a Motion to Suppress [ECF No. 30] is DENIED; and

2. Mills' Motion to Suppress [ECF No. 40] is DENIED.

Dated:  May 29, 2025                    /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 29, 2025, by electronic and/or ordinary mail.
<u>/s/ Marlena Williams</u>
Case Manager